## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Tendayi Mareya,

                Petitioner,

vs.                                REPORT AND RECOMMENDATION

Michael B. Mukasey, Attorney
General;[1] Denise Frazier, District
Director of U.S. Citizenship and
Immigration Services; and Scott
Banieke, Field Officer Director,
U.S. Immigration and Customs
Enforcement,

              Respondents.      Civ. No. 06-4525 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Petition of Tendayi Mareya for a Writ of Habeas

Corpus under Title 28 U.S.C. §2241.  The Petitioner, Tendayi Mareya ("Mareya"),

---

[1]On November 9, 2007, Michael B. Mukasey became the Attorney General and,
pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, we have substituted him
as the named Defendant.

appears pro se, and the Respondents, Michael B. Mukasey, et al., appear by Friedrich

A.P. Siekert, Assistant United States Attorney. For reasons which follow, we

recommend that the Petition for a Writ of Habeas Corpus be denied.

II. <u>Facts and Procedural Background</u>[2]

Mareya, a native and citizen of Zimbabwe, who is currently being detained by

Federal immigration authorities at the Sherburne County Jail, in Elk River, Minnesota.

Mareya has been detained since March 3, 2005, when the United States Immigration

and Naturalization Service ("INS")[3] took him into custody, pursuant to a final Removal

Order. See, <u>Petition</u>, <u>Docket No. 1</u>, at 2; <u>Administrative Record ("A.R.")</u>, <u>Docket No.</u>

---

[2]Our factual and procedural history is largely drawn from the Administrative Record that was submitted by the Respondents in support of their Responsive Memorandum. See, <u>Administrative Record ("A.R.")</u>, <u>Docket No. 12</u>, Attachment No. 1. We have also reviewed, and considered, the exhibits and documents submitted by Mareya in support of his Petition, and we will cite to them accordingly.

[3]On March 1, 2003, the former Immigration and Naturalization Service ("INS") ceased to exist as an agency, and was reorganized into the U.S. Immigration Customs and Enforcement, and Citizenship and Immigration Services, under the Department of Homeland Security. See, <u>Title 6 U.S.C. §252</u>, stat. notes (2003). Since the paperwork relating to Mareya's removal proceedings makes reference to all of those agencies, for the purposes of this Petition, we will refer to these agencies collectively as "INS," simply as a matter of convenience.

12, Attachment No. 1 at 50.[4]  Mareya originally entered the United States on May 6,
1999, as a nonimmigrant student, with permission to remain for the duration of his
studies.[5]  See, A.R., supra at 4, 19; see generally, Immigration and Nationality Act
("INA"), §101(a)(15)(F), Title 8 U.S.C. §1101(a)(15)(F).  Mareya stopped attending
school in the same month, which terminated his permission to remain in the United
States.  Id.  On January 22, 2004, the INS issued a Notice to Appear to Mareya for
removal proceedings, based upon his violation of the conditions of his visa, his failure
to attend school, and his employment for compensation without authorization from the
INS.  Id. at 2, 4, 19; see also,  INA §237(a)(1)(C)(i), Title 8 U.S.C. §1227(a)(1)(C)(i).

On May 11, 2004, Mareya was served with the Notice to Appear relating to his
removal proceedings.  See, A.R., supra at 3.  On May 22, 2004, Mareya appeared
before an Immigration Judge ("IJ"), admitted the violations charged in the Notice to
Appear, and conceded his removability.  Id. at 20, 26.  To avoid removal, Mareya

---

[4]Although the Warrant of Removal is dated March 10, 2005, Mareya contends
that he has been in INS custody since March 3, 2005.  For purposes of this Petition,
we accept Mareya's contention as true.

[5]Mareya first entered the United States in 1996.  In the spring of 1999, he
returned to Zimbabwe for approximately one and a half months, in order to attend his
brother's wedding.  He returned to the United States on May 6, 1999.  See, A.R.,
supra at 21; see also, Petitioner's Reply, Docket No. 14, at 1.

applied for asylum under INA §208, Title 8 U.S.C. §1158, which allows the Attorney General to grant asylum to applicants who prove refugee status based, in part, on a well-founded fear of persecution on account of their race, religion, nationality, membership in a particular social group, or political opinion. See, A.R., supra at 20; see also, INA §208(b)(1)(B)(i), Title 8 U.S.C. §1158(b)(1)(B)(i).

An applicant's testimony may be sufficient to prove refugee status if the trier of fact makes a favorable determination of the applicant's credibility. See, INA §208(b)(1)(B)(ii), (iii), Title 8 U.S.C. §1158(b)(1)(B)(ii), (iii). In addition to his application for asylum, Mareya concurrently applied for withholding of removal, see, INA §241(b)(3), Title 8 U.S.C. §1231(b)(3), alleging, pursuant to the United Nations Convention against Torture, that he would more likely than not be persecuted and tortured if removed to Zimbabwe. See, A.R., supra at 20-28; see also, 8 C.F.R. §§208.16(c), 208.18. As with an application for asylum, the applicant bears the burden of proof in an application for withholding of removal, though his or her testimony may be sufficient proof if deemed credible. See, 8 C.F.R. §208.18(c)(2).

In support of those applications, Mareya alleged that he would face persecution or torture in Zimbabwe based, primarily, on his father's political activities. See, A.R., supra at 22-26, 28. Mareya alleged that he and his brother had been interrogated,

- 4 -

about their father and uncles, at roadblocks on several occasions.  Id. at 21.  Mareya alleged that two of his uncles, at least one of whom was a member of an opposition party, had been killed in Zimbabwe. Id. at 23, 25.  Mareya asserted that his father had been a member of the now-defunct UNIPA, or UANC, political party.  Id. at 22, 25. He also asserted that his father was arrested and detained for three (3) days in the 1980s, based on his work as a private consultant in the distribution of agricultural land. Id. at 22, 25.  Mareya further claimed that his father had been interrogated at the airport, upon his return to Zimbabwe from the United States, in 1998 or 1999.  Id. at 23.  Mareya contended that the Zimbabwe Government opposed the work of the Methodist-run University where his father was then-employed.  Id.  Mareya averred that his mother had informed him that his father had been beaten at the airport upon his recent return to Zimbabwe.  Id. at 24.  Mareya also asserted that his parents had been the victims of an automobile accident, which Mareya believed had been staged, presumably by his father's political enemies.  Id. at 23, 25.  Mareya claimed to personally support the MDC political party. Id. at 25.

The IJ found that Mareya was not eligible for asylum because he had failed to apply for asylum within one (1) year of his arrival in the United States, nor had he provided any valid explanation for the delay.  See, INA §208(a)(2)(B), (D), Title 8

U.S.C. §1158(a)(2)(B), (D); 8 C.F.R. §1208.4(a)(2), (4) and (5); see also, A.R., supra at 27.   Therefore, the IJ denied Mareya's application for asylum.   With regard to Mareya's application for withholding of removal under the Convention against Torture, the IJ determined that Mareya had failed to prove that he would more likely than not face persecution or torture if removed to Zimbabwe.   Id. at 28.   Although the IJ found Mareya "generally credible," id. at 27, he rejected some of Mareya's statements as speculative.   Id.   The IJ found that Mareya had never been personally involved in politics, nor had his father been politically active since the 1980s.   Id. at 28. Moreover, the IJ found that Mareya, and his parents, had traveled regularly between Zimbabwe and the United States.   Id.   The IJ concluded:   "This is just not a very strong case."   Id.   Accordingly, on October 7, 2004, the IJ denied all of Mareya's applications for relief, and ordered his removal to Zimbabwe.   Id. at 18, 29.

Mareya appealed the IJ's decision to the Board of Immigration Appeals ("BIA").   See, A.R., supra at 31-35, 36-40.   On March 3, 2005, the BIA affirmed the IJ's decision in its entirety.   Id. at 49.   Thus, the BIA dismissed Mareya's appeal, and issued a final Removal Order.   See, id.

On March 31, 2005, Mareya filed a Petition for Review of the BIA's decision with our Court of Appeals, as well as a Motion for a Stay of Removal pending his

appeal.  Id. at 52, 53, 60; see also, Mareya v. Gonzales, 193 Fed.Appx. 650 (8th Cir.

2006); see also, INS §242(a)(5), Title 8 U.S.C. §1252(a)(5)(granting Federal  Courts

of Appeals sole jurisdiction to review Order of Removal).  On May 2, 2005, the Court

denied Mareya's Motion for a Stay.  Id. at 99; see also, Mareya v. Gonzales, Eighth

Circuit Docket No. 05-1867, available online at http://ecf.ca8.uscourts.gov.[6]   On

September 11, 2006, the Court denied Mareya's Petition for Review on the merits,

concluding that it lacked jurisdiction to review the BIA's finding that Mareya's

application for asylum was time-barred, and finding that Mareya's "testimony

supporting his claim of feared persecution was vague and speculative."  See, Mareya

v. Gonzales, supra at 650.

During the pendency of Mareya's removal proceedings and subsequent appeal,

he was also pursuing release from INS custody on bond.  On January 21, 2004, the

INS made a custody determination, and permitted Mareya's release, pending a final

removal decision, on a $10,000.00 bond.  See, Memorandum in Support, Docket No.

3, at Exhibit E; A.R., supra at 83.  Mareya was released from custody on July 2, 2004,

---

[6]"[F]ederal courts may sua sponte take judicial notice of proceedings in other
courts if they relate directly to matters at issue."  Conforti v. United States, 74 F.3d
838, 840 (8th Cir. 1996), cert. denied, 519 U.S. 807 (1996), quoting Hart v. C.I.R., 730
F.2d 1206, 1207 n. 4 (8th Cir. 1984).

under the Intensive Supervision Appearance Program ("ISAP").  See, <u>A.R.</u>, supra at 99; <u>Memorandum in Support</u>, supra, at Exhibit D.  However, Mareya violated the terms of ISAP by leaving the State.[7]  He was subsequently taken back into INS custody on September 7, 2004.  <u>Id.</u>; see also, <u>Memorandum in Support</u>, supra at 1, 2; <u>Response to Petition</u>, <u>Docket No. 12</u>, at 2;[8] <u>Petitioner's Reply</u>, <u>Docket No. 14</u>, at 2.

At some point, Mareya appealed the amount of his bond to an IJ, who affirmed the INS' custody determination, and the amount of bond.  <u>Id.</u> at 83.  Mareya appealed the IJ's decision to the BIA and, on February 1, 2005, the BIA remanded the case to the IJ for a reconsideration.  <u>Id.</u>  The BIA noted that the IJ found the bond determination appropriate because the IJ determined that Mareya was a danger to the community, due to his four criminal convictions for driving while intoxicated.[9]  <u>Id.</u>

_____

[7]Mareya denies that he violated the terms of his release, and contends that he was cleared "of any alleged violation."  See, <u>Petitioner's Reply</u>, supra 2.  We find nothing in the Record, however, to substantiate that contention.

[8]Mareya's Memorandum initially states that he was taken into custody, pursuant to his ISAP violation, on September 7, 2005.  We presume that this is a typographical error, and that he was in fact taken into custody on September 7, 2004, as he notes on page 2 of his Memorandum.

[9]It appears, however, that Mareya has been convicted only three (3) times for
(continued...)

The BIA, however, stated that, if Mareya posed a danger to the community, then discretionary release on bond was not permitted.  Instead, if Mareya were determined only to pose a flight risk, then the IJ should determine the appropriate amount of bond to ensure Mareya's appearance at any subsequent immigration proceedings.  Id.  On February 24, 2005, the IJ subsequently lowered the amount of Mareya's bond to $3,500.00.  Id. at 78.

During the pendency of Mareya's Petition for Review to the Court of Appeals, the INS was also actively pursuing Mareya's travel documents, in an effort to effect his removal to Zimbabwe.  On March 15, 2005, when contacted by an INS officer, Mareya refused to fill out a travel document application.  See, A.R., supra at 84. Mareya told the officer that his passport was "out on the street, with [his] people." Id.  On April 6, 2005, the INS sent Mareya a letter, which notified him of his obligation under INA §241(a)(1)(C), Title 8 U.S.C. §1231(a)(1)(C), to cooperate with the INS's efforts to obtain travel documents.  Id. at 84, 86. The INS directed Mareya to

---

[9](...continued)
driving while intoxicated.  See, Response to Petition, Docket No. 12, at 1; A.R., supra at 5-17, 91.

complete the travel document application, and to provide the INS with his passport. Id. at 86.

On April 12, 2005, Mareya responded by letter, asserting that no final Removal Order was in effect. Id. at 88. Mareya apparently incorrectly believed that he was not required to cooperate with the INS's efforts to obtain his travel documents, so long as his Petition for Review was pending before our Court of Appeals. Id. By letter dated April 14, 2005, the INS replied, and advised Mareya that the BIA's Order of March 3, 2005, was final, since a judicial Stay of removal had not been issued in his case. Id. at 87. The INS again directed Mareya to provide his passport, complete the travel document application, and otherwise cooperate with the INS's efforts to secure his removal. Id.

On June 8, 2005, after Mareya finally completed his travel document application, the INS contacted the Embassy of Zimbabwe (the "Embassy") to request travel documents for Mareya. Id. at 89, 96. On June 14, 2005, Mareya was interviewed by an Embassy official, who informed the INS, and Mareya, that either his passport, or a birth certificate, would be required to obtain travel documents. Id. at 107, 110. On June 15, 2005, the INS conducted a 90-day custody review, and decided to continue Mareya's detention, pending his removal. Id. at 90-96. In support of its

determination, the INS noted that travel documents were expected in the near future. Id. at 96.  The INS also noted that Mareya had previously violated the terms of his supervised release.[10]  Id.  The INS notified Mareya that he would receive another custody review if he was not released, or removed, by September 3, 2005.  See, id.

By late August of 2005, Mareya had informed the INS that his passport and Zimbabwe identification card were lost.  Id. at 99; see also, Memorandum in Support, supra at 5.  He stated, however, that his parents were attempting to obtain a copy of his birth certificate.  Id.  On September 25, 2005, the INS decided to continue Mareya's detention, pending his removal.  Id. at 103.  The INS stated that the Embassy was in the process of verifying Mareya's identification, and that travel documents were expected to be issued.  Id.

Mareya's family did not provide a copy of his birth certificate to the INS until July 11, 2006.  Id. at 107.  On July 20, 2006, the Embassy informed the INS that it required an **original** birth certificate to issue travel documents.  Id. at 109.  When

---

[10]We note that the letter, which notified Mareya of the INS's custody determination, mentioned only the INS's expectation that his travel documents would be issued shortly -- it made no mention of his failure to comply with his supervised release.  See, A.R., supra at 97.

Mareya showed no effort to obtain an original birth certificate, the INS contacted the U.S. Consular Office in Zimbabwe for assistance.  Id. at 107.  The Consular Office required written authorization from Mareya to obtain an original birth certificate.  Id. When the INS contacted Mareya on October 19, 2006, in order to obtain written authorization, he hung up on the INS officer, and subsequently refused to speak with the INS.[11]  Id.

On October 26, 2006, Mareya finally provided written authorization to the Consular Office to obtain his original birth certificate.  See, A.R., supra at 108.  The

---

[11]On September 19, 2006, Mareya wrote to the INS, requesting a custody review, which he believed to be due by September 29, 2006, presumably based on the passage of one (1) year since his custody review in September of 2005.  See, Exhibit G, Docket No. 6.  In his letter, Mareya requested that he be released on parole, and averred that he had been faithfully cooperating with the INS's attempts to secure his travel documents.  Id.  There is no evidence that a custody review occurred in September of 2006, presumably because, at that time, Mareya was not in fact cooperating with the INS's removal efforts.  See, 8 C.F.R. §241.4(g)(5).

Around the same time, Mareya began a hunger strike, while incarcerated at the Ramsey County Jail, in St. Paul, Minnesota.  See, A.R., supra at 107.  Mareya contends that he began his hunger strike on October 18, 2006, in an effort to convince INS officials to transfer him to the Sherburne County Jail.  See, Petitioner's Reply, supra at 3.  Mareya contends that the INS only agreed to the transfer once Mareya agreed to provide his written authorization for the Consular Office to obtain his original birth certificate from the Zimbabwe Government.  Id.  The INS contends that Mareya began his hunger strike, either on October 20, or October 23, 2006.  See, A.R., supra at 107, 109.  The factual dispute is not material to our analysis.

INS forwarded the authorization to the Consular Office on the same day.  Id. at 109.

On November 21, 2006, the Consular Office provided the INS with Mareya's original

birth certificate.  Id. at 115, 116.

On December 1, 2006, the INS decided to continue Mareya's detention,

pending his removal.  Id. at 117.  In its custody determination, the INS noted Mareya's

criminal convictions, and stated that Mareya's removal was imminent, given its recent

acquisition of his original birth certificate.[12]  Id.

In his Federal Habeas Petition, which he filed on November 15, 2006, Mareya

asserts that his continued detention violates INA §241, Title 8 U.S.C. §1231, and

Zadvydas v. Davis, 533 U.S. 678 (2001).  See, Petition, supra at 2; Memorandum in

Support, supra at 2, 5-6; Petitioner's Reply, supra at 11.  In his Reply Memorandum,

Mareya further asserts that his Procedural Due Process rights have been violated by

the INS's custody review procedure.  See, Petitioner's Reply, supra at 12-14.  The

Respondents oppose the Petition by contending that Mareya's removal is likely in the

---

[12]On October 17, 2007, the INS filed a supplemental return, advising that Mareya's removal had not yet been effected.  See, Respondents' Supplemental Return, Docket No. 16.  In its supplemental return, the INS reported that Mareya continues to act as an impediment to his removal, by refusing to provide a signature for his travel documents, as requested by the Embassy.  Id. at 2; see also, Declaration of Ryan C. Van Zee, Docket No. 17, at ¶¶17-21.

reasonably foreseeable future, and because the delay in removal was caused by Mareya himself.  See, <u>Response to Petition</u>, supra at 1.  The Respondents further contend that Mareya has received periodic custody reviews, as required by relevant Immigration Regulations.  <u>Id.</u> at 9, 13.  Accordingly, the Respondents maintain that Mareya has shown neither a Substantive nor a Procedural Due Process claim.  We address each of Mareya's claims in turn.

### III.  <u>Discussion</u>

A.    <u>Mareya's Substantive Due Process Claim</u>.

1.    <u>Standard of Review</u>.  "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  <u>INA §241(a)(1)(A), Title 8 U.S.C. §1231(a)(1)(A)</u>.

> The removal period begins on the latest of the following:
>
> (i)    The date the order of removal becomes administratively final.
>
> (ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii)  If the alien is detained or confined (except under an immigration process),

>the date the alien is released from
>detention or confinement.

INA §241(a)(1)(B), Title 8 U.S.C. §1231(a)(1)(B).

Detention is mandatory during the 90-day removal period.  See, INA §241(a)(2), Title 8 U.S.C. §1231(a)(2).

An alien's detention may continue beyond the removal period, at the discretion of the Attorney General, when removal has not been effected within 90 days.  See, INA §241(a)(6), Title 8 U.S.C. §1231(a)(6); Zadvydas v. Davis, supra at 682; see also, 8 C.F.R. 241.4(c)(1)(delegating authority to INS District Directors to make initial custody determinations as well as subsequent determinations during 90-day removal period, and 90-day post-removal-period).  Although the Attorney General,  and -- by delegation -- the INS, has discretion to detain an alien beyond the removal period, that continued detention is subject to the limits of the Fifth Amendment's Due Process clause.  See, Zadvydas v. Davis, supra at 690-692.

In Zadvydas v. Davis, the Supreme Court rejected, as unconstitutional, the Government's argument that the Attorney General has discretion to detain indefinitely an alien subject to a final Removal Order.  Id. at 689, 692 ("The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any [procedural] protection

- 15 -

is obvious"). Instead, the Supreme Court read a temporal limitation into INA §241(a)(6), Title 8 U.S.C. §1231(a)(6), holding that, although detention beyond the 90-day removal period was permitted by statute, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." <u>Zadvydas v. Davis</u>, supra at 699 (citation omitted).

The <u>Zadvydas</u> Court contemplated that the determination of whether removal was "reasonably foreseeable" would be made in consideration of an alien's Petition for Habeas relief under Title 28 U.S.C. §2241. See, <u>Zadvydas v. Davis</u>, supra at 699 (citing <u>Title 28 U.S.C. §2241(c)(3)</u> as the Courts' authority to determine whether detention is "in violation of the Constitution or laws or treaties of the United States."). A Habeas Petition under Section 2241, however, may not be used to seek review of an Order of Removal in a Federal District Court:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, * * * a petition for review filed with an appropriate **court of appeals** in accordance with this section shall be the **sole and exclusive means** for judicial review of an order of removal entered or issued under any provision of this chapter[.]

<u>INA §242(a)(5), Title 8 U.S.C. §1252(a)(5)</u>[emphasis added].

- 16 -

Thus, this Court may not consider the merits of the BIA's final Removal Order in this case. Nonetheless, under the holding of Zadvydas v. Davis, supra, a Federal District Court has jurisdiction to entertain a Petition for Habeas relief when an alien subject to a final Order of Removal challenges only his continued detention. See, Bah v. Cangemi, 489 F. Supp.2d 905, 914 n.9 (D. Minn. 2007); Moallin v. Cangemi, 427 F. Supp.2d 908, 921 (D. Minn. 2006)(collecting cases).

In considering whether an alien's continued detention violates the Constitution, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." Zadvydas v. Davis, supra at 699-700. In Zadvydas v. Davis, the Supreme Court recognized that it was presumptively reasonable for INS to detain an alien for six (6) months following a final Removal Order -- i.e., for the initial 90-day removal period, plus another 90 days. Id. at 701; see also, Bah v. Cangemi, supra at 917. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

2. Legal Analysis. As noted, the 90-day removal period begins to run on the latest of three possible dates: (1) the date of a final Removal Order; (2) if a

Court orders a Stay of removal in order to permit judicial review of a Removal Order, the date of that Court's final Order; or (3) if the alien is detained on non-immigration grounds, the date the alien is released from such detention.  See, INA §241(a)(1)(B), Title 8 U.S.C. §1231(a)(1)(B).  Here, the Removal Order became effective, and final, when the BIA dismissed Mareya's appeal on March 3, 2005.  See, INA §241(a)(1)(B)(i), Title 8 U.S.C. §1231(a)(1)(B)(i).  Our Court of Appeals denied Mareya's Motion for a Stay of Removal, and therefore, the start of his removal period was never deferred from March 3, 2005.  See, INA §241(a)(1)(B)(ii), Title 8 U.S.C. §1231(a)(1)(B)(ii).  Accordingly, Mareya's 90-day removal period should have expired on May 31, 2005, and his 90-day post-removal-period, under Zadvydas v. Davis, should have expired on August 28, 2005.

However, Mareya initially failed to comply with his statutory obligation to cooperate fully with the INS's efforts to obtain his travel document, as required by law, as follows:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

INA §241(a)(1)(C), Title 8 U.S.C. §1231(a)(1)(C); see also, Hydara v. Gonzales, 2007 WL 2409664 at *2 (D. Minn., August 21, 2007); Kanteh v. Ridge, 2005 WL 1719217 at *3 (D. Minn., June 30, 2005)("[T]he petitioner in this instance does not appear to have made any sincere continuing effort to obtain travel documents as a counter to the agency's well-founded allegation of non-cooperation, and such inaction may appropriately be construed as a continuing refusal to cooperate."); compare, Jama v. Immigration and Customs Enforcement, 2005 WL 1432280 at *1 n. 2 (D. Minn., April 7, 2005)(Alien could not be considered noncompliant for failing to obtain passport where "no authority exists which is able to issue a Somali passport.").

Here, the Record shows that Mareya was initially uncooperative with the INS' efforts to obtain his travel documents. It was only on June 8, 2005, that the INS was able to send Mareya's completed travel document application to the Embassy. See, A.R., supra at 84-89. Accordingly, the time period between March 3, and June 8, 2005, should not count toward Mareya's 90-day removal period. In addition, Mareya again refused to cooperate with the INS between July 20, and October 26, 2006, when the agency was attempting to obtain Mareya's original birth certificate. See, A.R. at 107-108. As a consequence, that period of time should likewise be excluded from Mareya's post-removal-period detention under Zadvydas v. Davis.[13]

---

[13]Mareya asserts that he fully complied with his statutory obligation to cooperate with the INS. See, Memorandum in Support, Docket No. 3, at 3; Petitioner's Reply, supra at 2, 7. However, we find that his assertion to be flatly contradicted by the INS's Administrative Record, and by Mareya's own Reply Memorandum. See, Petitioner's Reply, supra at 3.

(continued...)

Even with those exclusions, Mareya had been detained for more than nine (9) months beyond the six (6) month <u>Zadvydas</u> period, as of November 15, 2006, the date of his Habeas Petition.  However, we cannot conclude that Mareya's Habeas Petition asserts a valid claim under <u>Zadvydas v. Davis</u>.  Beginning in June of 2005, Mareya was regularly representing to the INS that his family was working to obtain his birth certificate.  See, <u>A.R.</u>, supra at 110-112.  Mareya's family finally provided the INS with a copy of his birth certificate on July 11, 2006.  <u>Id.</u> at 99, 107.  This time period accounts for more nearly (11) months of his detention:  the three (3) months of his removal period, the three (3) remaining months of his <u>Zadvydas</u> period, and another five (5) months of post-<u>Zadvydas</u> detention.  Moreover, once Mareya provided written authorization for the U.S. Consular Office to obtain his original birth certificate, it took the INS only three (3) weeks to acquire it.  <u>Id.</u> at 115, 116.  Mareya subsequently received a custody review on December 1, 2006, at which time, the INS believed that

---

[13](...continued)

Moreover, given the INS's representation, that Mareya continues to impede its efforts to secure his removal, see, <u>Declaration of Ryan Van Zee</u>, <u>Docket No. 17</u>, at ¶¶17-21, the Record suggests that the time period from January 12, through September 14, 2007, should also be excluded from Mareya's post-removal-period detention.

its recent acquisition of Mareya's original birth certificate would soon result in the issuance of travel documents for his removal.  Id. at 117.

Accordingly, although we find that the six (6) month Zadvydas period had expired prior to Mareya's Habeas Petition, we conclude that Mareya has failed to provide us good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  See, Zadvydas v. Davis, supra at 701; Hydara v. Gonzales, supra at *2 ("[W]hen an alien obstructs his removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future.").  In this respect, Mareya asserts only that he is "unaware of any definite and concrete plans or arrangements to remove him from the United States[.]" See, Memorandum in Support, supra at 7.

He further contends that, because the Embassy had not issued his travel documents as of the date of his Habeas Petition, he must be released.  See, Petitioner's Reply, supra at 5.  We find Mareya's assertions unpersuasive to show that his removal is not likely, given that the INS has been actively pursuing his removal, and given that Mareya's own lack of cooperation significantly delayed the acquisition of

his travel documents.[14]   Once Mareya provided written authorization on October 26,

2006, the INS was able to acquire his original birth certificate just one (1) week after

Mareya filed his Habeas Petition.  Given the INS's progress toward securing his travel

documents, at about the same time as Mareya's Habeas Petition, Mareya has not

shown that his removal is unlikely within the reasonably foreseeable future.[15]

Therefore, Mareya has not met his burden under Zadvydas v. Davis, and we

recommend that his Petition be denied.

Even assuming that Mareya had met his initial burden to show a Zadvydas claim,

we find that the Respondents have rebutted Mareya's claim.  See, Zadvydas v. Davis,

supra at 701.  The Respondents have provided a Declaration from John Longshore,

---

[14]We acknowledge that the INS gave Mareya nearly one (1) year to locate his birth certificate, following his initial interview with the Embassy.  Although we are puzzled as to why the agency did not seek the assistance of the U.S. Consular Office sooner, the Record does not show any evidence of bad faith on the part of the INS.  Indeed, it appears that INS officers regularly contacted both Mareya, and the Embassy, to monitor the status of his travel documents.  See, A.R., supra at 110-112.  In any event, we do not conclude that the INS should have sought outside assistance sooner, since Mareya was clearly obligated, by statute, to seek the travel documents necessary for his removal.  See, INA §241(a)(1)(C), Title 8 U.S.C. §1231(a)(1)(C).

[15]Similarly, although the INS advises that Mareya's removal has not been effected, as of October 17, 2007, see, Respondents' Supplemental Return, Docket No. 16, there is no evidence that the INS will be unable to promptly acquire Mareya's travel documents, once Mareya provides his signature, as requested by the Embassy.

who is the acting INS Field Office Director, and who is responsible for Mareya's removal.  See, <u>Response to Petition</u>, supra, Attachment No. 2 ("Longshore Decl."). Longshore states that the INS has been able to remove more than 57 Zimbabwe citizens in the three (3) years preceding Mareya's Habeas Petition.  <u>Id.</u> at ¶4; compare, <u>Nor v. Baniecke</u>, 2006 WL 1517770 at *6 (D. Minn., May 26, 2006) (finding that "there is a significant likelihood that the government will not be able to remove [the alien petitioner] due to the instability in Somalia and the lack of a centralized government.").  Longshore acknowledged that it sometimes took up to twelve (12) months for the Embassy to issue travel documents, in part because the Zimbabwe Government does not have an automated records system.  <u>Id.</u> at ¶5; compare, <u>Bah v. Cangemi</u>, supra at 923 ("Liberia's slowness in issuing travel documents * * * may explain why Bah has not yet been removed, but [it does] not demonstrate that his removal is significantly likely in the reasonably foreseeable future.").

Here, the Record shows that the Embassy has been responsive to the INS, conducting two (2) interviews with Mareya, and contacting the Zimbabwe Government to inquire about Mareya's travel documents.  See, <u>A.R.</u>, supra at 107-112.  The Embassy continues to inform the INS of the documentation required for Mareya's travel documents.  <u>Id.</u>  Accordingly, we conclude that the Respondents have

sufficiently rebutted any claim under <u>Zadvydas v. Davis</u>.  Cf., <u>Khan v. Gonzales</u>, 481

F. Supp.2d 638, 640 (W.D. Tex. 2006)(Government failed to rebut where Bangladeshi

consulate declined to issue travel documents, despite full cooperation of alien);

<u>Habtegaber v. Jenifer</u>, 256 F. Supp.2d 692, 697 (E.D. Mich. 2003) (Government failed

to rebut <u>Zadvydas</u> claim where "neither Eritrea nor Ethiopia has responded to the INS'

July 2002 request for travel documents," and there was "no evidence that the INS

ha[d] attempted to follow up on its July correspondence to Eritrea and Ethiopia or that

it has otherwise taken any additional steps to secure [the alien's] removal."); see also,

<u>Hmaidan v. Ashcroft</u>, 258 F. Supp.2d 832, 838 (N.D. Ill. 2003)("A court can consider

ongoing efforts by INS or others to repatriate an individual in reviewing the question

of whether removal is likely in the reasonably foreseeable future.").  As a result, we

recommend that Mareya's Petition be denied.

      B.    <u>Mareya's Procedural Due Process Claim</u>.

          1.    <u>Standard of Review</u>.  "It is well established that the Fifth

Amendment entitles aliens to due process of law in deportation proceedings."  <u>Reno</u>

<u>v. Flores</u>, 507 U.S. 292, 306 (1993); <u>Al Khouri v. Ashcroft</u>, 362 F.3d 461, 464 (8th

Cir. 2004); <u>Badio v. United States</u>, 172 F. Supp.2d 1200, 1205 (D. Minn. 2001); see

also, <u>Zadvydas v. Davis</u>, supra at 693 ("[T]he Due Process Clause applies to all

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976); see also, Mohamed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007)(citing same in the context of removal proceedings). "The precise contours of procedural due process depend on the circumstances of the case and require consideration of several factors:  the public and private interests at stake and the risk of an erroneous deprivation." Mohamed v. Gonzales, supra at 526, citing Mathews v. Eldridge, supra at 335; see also, Zadvydas v. Davis, supra at 694; Ochoa-Carrillo v. Gonzales, 437 F.3d 842, 847 (8th Cir. 2006).

       2.    Legal Analysis.  Mareya raises a Procedural Due Process claim relating to the INS's custody review procedures.  As noted, the Attorney General has discretion to detain a removable alien beyond the 90-day post-removal-period.  See, INA §241(a)(6), Title 8 U.S.C. §1231(a)(6); see also, Zadvydas v. Davis, supra at 689. However, an alien detained under that provision is entitled to custody reviews under relevant Immigration Regulations.  See, 8 C.F.R. §241.4(a)(2).

      When an alien is detained pursuant to an administratively final Removal Order, the local INS District Director conducts a records review before the expiration of the

90-day removal period.   See, 8 C.F.R. §241.4(c)(1), (h)(1), (k)(1)(i).   The alien

receives 30 days' notice of the records review, and may submit information in writing

in support of his release.   See, 8 C.F.R. §241.4(h)(1-2).   The INS District Director is

encouraged to consider the alien's disciplinary record, criminal history, mental health

records, rehabilitation efforts, ties to the community, and immigration history, as well

as the alien's flight risk and dangerous or violent tendencies.   See, 8 C.F.R. §241.4(f),

(h)(3).   To release the alien, the INS Director must find that the alien is not likely to be

violent, to pose a threat to the community, to flee if released, or to violate the

conditions of release.   See, 8 C.F.R. §241.4(e), (h)(3).   The alien is entitled to written

notice of the INS Director's decision to release or detain him.   See, 8 C.F.R.

§241.4(h)(4).

 If the INS Director decides to continue detention, the alien receives another

custody review around the time that the 90-day post-removal-period expires -- this

time by the Headquarters Post-Order Detention Unit (the "HQPDU"), the Executive

Associate Commissioner, and a two- or three-person Review Panel.   See, 8 C.F.R

§241.4(i)(1), (k)(1)(ii), (k)(2).   The alien again receives 30 days' notice of the custody

review.   See, 8 C.F.R. §241.4(k)(2)(ii).   The Review Panel initially conducts a records

review, and may recommend release on that basis.   See, 8 C.F.R. §241.4(i)(2).   If the

records review does not result in a recommendation for release, then the Review Panel must personally interview the alien. See, 8 C.F.R. §241.4(i)(3)(i). The alien may choose to be accompanied during the interview, at no personal expense. See, 8 C.F.R. §241.4(i)(3)(ii).

Based on that interview, the Review Panel may recommend release or detention. See, 8 C.F.R. §241.4(5). The Executive Associate Commissioner then reviews the recommendation, and issues a custody determination. See, 8 C.F.R. §241.4(i)(6). As in the 90-day custody review, the Executive Associate Commissioner may consider the factors outlined by 8 C.F.R. §241.4(f), but must make the findings outlined in 8 C.F.R. §241.4(e) before ordering the alien's release. See, 8 C.F.R. §241.4(i)(6). The alien is entitled to a copy of the custody determination decision. See, 8 C.F.R. §241.4(d). Following this second custody review, the alien is thereafter entitled to annual custody reviews. See, 8 C.F.R. §241.4(k)(2)(iii). Between annual reviews, the alien may request release, no more than once every three (3) months, based upon a material change in circumstances. Id.

In his Reply Memorandum, Mareya contends that the procedure we have detailed violates his Procedural Due Process rights, because custody determinations are made by the INS, rather than "a neutral decision-maker." See, Petitioner's Reply,

supra at 12.   Mareya also claims a Procedural Due Process violation because, he urges, the custody review procedure fails to ensure timely review, fails to give the alien timely notice of findings, fails to timely notify counsel of upcoming Hearings, and fails to permit an alien to call or cross-examine witnesses.  Id. at 12-13.  The Respondents contend only that Mareya has received all of the process due to him under the Regulation.  See, Response to Petition, supra at 9, 13.

At the outset of our analysis, we note our jurisdiction to consider Mareya's constitutional challenge to the regulatory framework of 8 C.F.R. §241.4.  See, Zadvydas v. Davis, supra at 688 ("[Section] 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); see also,  Ali v. Achim, 342 F. Supp.2d 769, 775 (N.D. Ill. 2004) (rejecting Procedural Due Process challenge to Federal Regulation, 8 C.F.R. §1003.19, which provides aliens individual Bail Hearings during pre-removal-period detention); Beqir v. Clark, 220 Fed.Appx. 469, 471 (9th Cir., January 25, 2007) (rejecting similar Procedural Due Process challenge to pre-Removal Order detention, though not citing to Regulation).   In this process, we do not review the substantive decision made by the INS pursuant to that Regulation.  See, 8 C.F.R. §241.4(d) ("[T]here is no appeal

from the [INS' custody determination] decision.").  Instead, we consider only whether the Regulation's procedures  provide adequate Due Process.

We find Mareya's challenge to be without merit.   "Due process cannot be satisfied by 'rubber stamp' denials of release," as "Due process requires an evaluation of the individual's current threat to the community and risk of flight."   Ford v. Quarantillo, 142 F. Supp.2d 585, 587 (D. N.J. 2001); Mashai v. I.N.S., 256 F. Supp.2d 371 (E.D. Pa. 2003)(citing same to reject Due Process challenge to 8 C.F.R. §241.4).  The custody review procedures, as provided in 8 C.F.R. §241.4, amount to more than a cursory, "rubber stamp" custody review.  Ample notice is provided to the alien in advance of the custody review, and the alien is allowed to submit information in support of release.  Moreover, the alien may request outside assistance, if he so desires, so as to prepare information for the consideration of the INS Director or the Review Panel.  The Regulation also requires a personal interview of the alien, if a records review does not lead to release, pursuant to the second custody review.  Accordingly, we conclude that, "[w]hen the INS abides by these * * * [p]rocedures due process is satisfied." Mashai v. I.N.S., supra at 376-77 (alterations in original), quoting Ford v. Quarantillo, 142 F. Supp.2d 585, 588 (D. N.J. 2001), citing, in turn, Chi Thon Ngo v. INS, 192 F.3d 390, 398 (3rd Cir. 1999).

Although we recognize that Mareya has asserted a private liberty interest, we find that the custody review procedure serves equally important public interests -- namely, that aliens be detained following a final Removal Order where they pose a risk of flight, or a danger to the community, and that aliens be present when the INS is ready to execute a final Removal Order. We are not able to responsibly conclude that the procedure presents a serious risk that an alien will be erroneously deprived of his liberty, given that the alien is allowed to present evidence, and is entitled to a personal interview.

Although Mareya claims that he should be able to present and cross-examine witnesses during his custody reviews, we cannot credit his argument. His argument, in effect, challenges the method by which 8 C.F.R. §241.4 implements INA §241, Title 8 U.S.C. §1231, which gives the Attorney General the discretion to detain aliens beyond the removal period. In the face of a challenge to the interpretation of a statute by an Administrative Agency, a Court must make a two-step inquiry:   1) is the language of the statute ambiguous; and 2) if so, is the agency's interpretation of the statute reasonable. See, Chevron USA Inc. v. Natural Resources Defense Council Inc., 467 U.S. 837, 842-45 (1984). "[W]here Congress has enacted a law that does not answer 'the precise question at issue,' all [a Court] must decide is whether the

[Administrative Agency] * * * has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'"   <u>Lopez v. Davis</u>, 531 U.S. 230, 242 (2001); see <u>Zacher v. Tippy</u>, 202 F.3d 1039, 1044 (8th Cir. 2000)(A Court must defer to an agency's interpretation, "so long as it is a permissible construction of the statute.").

Here, Congress has authorized the Attorney General to detain aliens beyond the removal period, but did not outline any procedure for the exercise of that discretion. Accordingly, the Attorney General's interpretation of the statute is entitled to our deference.  We find that the custody review procedure of 8 C.F.R. §241.4 constitutes a reasonable method for implementing the Attorney General's statutory authority, particularly since the Regulation satisfies Procedural Due Process.  See, <u>Mashai v. I.N.S.</u>, supra at 376-77.

Finally, while Mareya cites several cases in support of his Procedural Due Process claim, see, <u>Petitioner's Reply</u>, supra at 14, we find those cases to be inapposite, as they cite to a prior version of 8 C.F.R. §241.4, which provided fewer procedural protections.  Moreover, the Record shows that Mareya has received the full benefit of the procedures outlined by 8 C.F.R. §241.4.  Mareya received his initial

90-day custody review on June 15, 2005.[16]  See, A.R., supra at 90-96.  He also received his second custody review, slightly more than 90 days later, as permitted by the Regulation, on September 25, 2005.  Id. at 103.  Thereafter, Mareya was entitled to annual custody reviews under the Regulation.  He received his third custody review on December 1, 2006, approximately fourteen (14) months later.  Id. at 117.  As previously detailed, we find that the delay was excused by Mareya's failure to cooperate with the INS in the interim, between July, and October of 2006.  Id. at 107.

 Although Mareya requested an annual custody review in September of 2006, by a letter to the INS, see, Exhibit G, Docket No. 6, he was not entitled to a custody review, nor a release, at that time.  See, INA §241(a)(1)(C), Title 8 U.S.C. §1231(a)(1)(C); 8 C.F.R. §241.4(g)(5).  As a result, Mareya has received regular custody reviews, according to the Regulation's procedure.

In sum, we find that Mareya's Procedural Due Process claim is without merit. Accordingly, for reasons expressed, we recommend that his Petition be denied.

———————————

[16]As noted, we find that the start of Mareya's removal period was initially delayed by his refusal to cooperate with the INS.  The INS, however, conducted Mareya's custody reviews as though his removal period began with the date of the BIA's final Order.  This discrepancy does not support Mareya's claim because the INS's schedule was beneficial to Mareya, by providing him with a custody review before he was so entitled.

NOW, THEREFORE, It is –

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.


Dated:  November 15, 2007                   s/Raymond L. Erickson
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 3, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 3, 2007,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.